EZRA SUTTON (ES-2189)
JOSEPH SUTTON (JS-9864)
ANTHONY MORANO(AM-9205)
**EZRA SUTTON, P.A.**
Plaza 9, 900 Route 9
Woodbridge, New Jersey 07095
Tel.: (732) 634-3520
Fax: (732) 634-3511
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— X
                                              :
JGV Apparel Group, L.L.C.                     :    Civil Action No. 1:16-CV-
                                                   01481(S.D.N.Y.) (NRB)
                                              :    ECF CASE
                Plaintiff,                    :
                                              :    **AMENDED COMPLAINT**
        v.                                    :
                                              :
Therapy Stores, Inc.                          :
                                              :    **JURY TRIAL DEMANDED**
                Defendant.                    :
—————————————————————— X

**AMENDED COMPLAINT FOR FEDERAL TRADEMARK**
**INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, & COMMON LAW**
**INFRINGEMENT & UNFAIR COMPETITION**

Plaintiff JGV Apparel Group, L.L.C. (hereinafter "plaintiff" or JGV), by and through

its undersigned counsel, for its Complaint against Defendant, Therapy Stores, Inc., also

trading as "Therapy" (hereinafter "THERAPY STORES" or "defendant") states the

following as set forth below. Allegations made on information and belief are premised on the

belief that the same are likely to have evidentiary support after a reasonable opportunity for

1

further investigation and discovery.

## JURISDICTION, PARTIES, & NATURE OF THE ACTION

1.    This action arises under the Trademark Laws of the United States, and specifically the Trademark Act of 1946, as amended, as hereinafter more fully appears, and under an ancillary state law claim under New York statutes governing unfair competition. *Subject Matter Jurisdiction* is conferred on this Court pursuant to 15 U.S.C. §1121(actions arising under the Federal Trademark Act); 28 U.S.C.§§1331(federal question); 28 U.S.C. 1338(a) (acts of Congress relating to trademarks); and 28 U.S.C. §1367(supplemental jurisdiction for related state law claims).

2.    Plaintiff, JGV APPAREL GROUP, L.L.C. (hereinafter "JGV") is a limited liability company duly organized and existing under the laws of the State of New York, and having a place of business at 1412 Broadway, New York, New York 10018.

3.    Defendant, THERAPY STORES, INC. (hereinafter "Therapy Stores" or "defendant"), also trading as Therapy, is a California corporation, having a principal place of business at 347 East Campbell Avenue, Campbell, California 95008.

4.    Defendant operates 12 retail stores named **THERAPY**, including 11 in Northern California and one recently opened in 2015 in Oregon, and has marketed and sold, and continues to market and sell, clothing and related products under the  trade name and service mark **THERAPY**. Defendant's stores are primarily located in San Francisco and the surrounding area.

2

5.      Personal jurisdiction is proper over the defendant under CPLR §302 (specific jurisdiction), generally, for the various reasons(which are detailed more fully in the paragraphs below).  More generally, Defendant has sold product in its retail stores using the **THERAPY** trade name, and shipped said merchandise to New York residents. Defendant has advertised, promoted and solicited business using its infringing trade name via its own web site with customers residing in this District. In addition, defendant advertises and promotes its business online through other web sites, such as Facebook.com, with the **THERAPY** trade name, wherein New York residents are reached. Defendant has also attended annual trade shows in the field of gifts in New York and purchased goods using its infringing trade name **THERAPY**. Details of the above aspects of specific jurisdiction are set forth below, and are made in good faith on information and belief, and based on documents available to plaintiff at this early stage, without the benefit of jurisdictional discovery. Therefore, the defendant has sufficient contacts in the Southern District of New York to subject it to this court's personal jurisdiction.

6.      Specifically, Defendant's web site states that it has 12 retail stores named **THERAPY** in the San Francisco and surrounding areas of Northern California, as well as a newer store also named THERAPY opened in Oregon in 2015, well after plaintiff's federal trademark registration for THERAPY issued in 2010. Defendant alleges, in various documents filed with the PTO, to have been in business using its trade name since at least

as early as 1994. During this time, there have been dozens of reviews posted online by customers and tourists **who reside in New York**, including on Yelp.com, confirming that they purchased clothing from defendant's **THERAPY** retail stores, and indicating that they received such purchased merchandise, which was, on information and belief, either shipped or ultimately received at their residence in New York. For purposes of specific jurisdiction, Plaintiff has strong indications from numerous Yelp.com reviews that potentially numerous New York residents have received shipments of merchandise into New York, under the accused trade name **THERAPY** (whether via receipts bearing the trade name, invoices enclosed with the package, or via markings of the trade name on boxes bearing the goods).

7.      Said merchandise is believed to bear the infringing trade name/ service mark **THERAPY STORES**, and/or **THERAPY**, including via receipts for purchase, invoices, and/or on boxes received by said customers residing in New York. As such, the plaintiff's claims assert that such sales infringe on Plaintiff's federal registration for the mark **THERAPY** for clothing, and the claims arise from these infringing sales into New York for purposes of specific jurisdiction. While plaintiff has claimed in the Whelan Declaration that it is not "set up" for making shipments outside its stores on the West Coast, this is not quite the same as stating that no such shipments have occurred over the course of 20 years, and more recently in the last few years.

8.      Still further, Defendant admits in the Whelan Declaration submitted to the Court that it attends an annual **gift** show in New York at the Javitz Center, and has placed

purchase orders over the years while at this **annual** trade show in New York. At such a show, it is believed that defendant naturally does business as **Therapy Stores**, including using the trade name on their purchase orders. Such "gifts" are believed to include clothing or fashion-related accessories, and defendant has not denied same, which are sufficiently **related** for infringement purposes to plaintiff's registration for **THERAPY** covering various clothing items. Such acts constitute tortious acts committed annually inside New York, and satisfy specific jurisdiction being proper in New York. Also, such acts have occurred on not just a single act basis, as has been interpreted by the case law as all that is required for jurisdiction, but on an annual basis apparerently for many years, exceeding the single act requirement.

9.      Defendant is, on information and belief, apparently having meetings with such New York-based suppliers at these annual trade shows located in New York, and these are apparently the same suppliers that plaintiff likely has purchased goods from. The Defendant even lists many of their vendors on their web page, located at **shopattherapy.com**, and many of these vendors are top clothing designers for which it is well known have offices and stores located in New York (including Levi, Diesel, Original Penguin, Ben Sherman, Paul Frank). Defendant's acts of continuously entering into contracts on an annual basis while present in New York to purchase goods means that defendant is purposefully availing itself of the benefits and protections provided under the New York law of contracts and commercial transactions.

10.     Still further, it has recently been discovered online that defendant Therapy Stores is intentionally **advertising** its chain of retail stores with its trade name/service mark **THERAPY STORES** on a national basis, including in New York, to obtain new customers. It runs website campaigns through its own web site, as well as online and through social media sites, including Facebook pages, Instagram, and Yelp.com mentioned previously. The defendant's chain of stores is thus systematically promoting its accused **THERAPY** store name through internet advertising. Defendant invites customers to join their mailing list online, and get product information from them online, and even purchase gift certificates from them online. On all of the attached web pages, the accused trademark is prominently displayed. This third aspect of **advertising**, when combined with the above discussed activities made through **sales** to New York residents, and purchasing and contracting for goods when present at **trade shows** in new York, when viewed in totality, satisfies the requirements of specific jurisdiction.

11.     The foregoing **advertising** activities online are all accessible to New York residents, who are key tourists that defendant wishes to attract to its stores located in the San Francisco area, which is well-known for tourism. Specifically, it is known that the San Francisco metropolitan area is experiencing a huge influx of new residents (particularly in the technology industry) ; and, that San Francisco is a major tourist destination. Internet advertising reaching New Yorkers can attract local purchases by New York residents visiting San Francisco, as well as New York residents who move to San Francisco.

Advertising with the infringing trade name also means that the plaintiff's claim arises from such advertising contacts with New York.

12.    Defendant has also filed two separate documents in the U.S. Patent & Trademark Office that are relevant to the issue of their contacts in New York. In their **Petition to Cancel** plaintiff's registration, filed in September 2015, defendant makes several statements about defendant's mark being "**widely recognized throughout the U.S.**" (¶9); that defendant "**has built a valuable reputation in the U.S. as a trendy store featuring clothing**" (¶11); and that **defendant's mark "is widely recognized as a brand of retail and online stores for clothing, furniture, jewelry, and other items throughout the U.S.**" (¶16) (see USPTO Cancellation No. 92-062244). In addition, defendant filed an application for registration with the USPTO in January 2015 for the mark **THERAPY** in class 35 for retail sales including clothing, swearing that it has been using the mark **THERAPY** in **interstate commerce** since **1994**. Defendant's statements made in its Petition for cancellation filed with the USPTO in 2015, and its U.S. trademark application filed under oath in 2015 alleging use of their mark in **interstate** commerce, only further support "minimum contacts" with New York, when the totality of facts and circumstances are weighed.

13.    It is also believed that Plaintiff cannot compel the attendance of third party witnesses in New York who are critical to Plaintiff's case if this case were to be litigated in California, which is beyond the 100 mile rule for subpoenas.

14.    Venue is proper under 28 U.S.C. §1391(b) & (c)).  Specifically, venue is properly laid under 28 U.S.C. §1391(b), since it is believed that personal jurisdiction is proper in New York. Specifically, sales into New York have occurred through New York residents that have visited its stores when touring the Northern California area, and that have received shipments of merchandise into New York. Defendant has attended trade shows in New York and used its THERAPY trade name to enter contracts at such shows. Further, Plaintiff resides in New York, and has and will sustain injury to its business.  Further, plaintiff stands to sustain further damage in New York.  Defendant has indicated that it is expanding its business nationwide, including via its plans to make clothing sales online under the trade name and retail service mark **THERAPY**; and via plans to open brick and mortar stores in the Pacific Northwest. Plaintiff had earlier sales in such territory with its mark **THERAPY** to establish common law rights dating back to 2005, and plaintiff's federal registration issued in 2010 covers said territory and predates any such future sales.  There is also a likelihood that consumers in the Southern District of New York have been confused as to whether there is a connection or affiliation between plaintiff and defendant.

## BACKGROUND FACTS

15.    Plaintiff JGV, including its predecessors, has adopted, used, and continues to use the trademark **THERAPY** in interstate commerce since at least as early as April 2005 (hereinafter the "THERAPY mark"), for various clothing products.

16.     JGV's predecessor Victor Green, who remains an owner of JGV, adopted the mark **THERAPY** in April 2005 in good faith, without knowledge of defendant, in a *remote* territory (New York) as compared to defendant's territory limited to northern California. ('Remote' being defined as a territory, such as New York, where defendant's alleged usage of its mark for retail stores in California had not spread to, and had not reached any level of being known and recognized in New York).

17.     In addition to   being inherently distinctive in relation to plaintiff's conventional clothing,  plaintiff's  **THERAPY** mark has *acquired* secondary meaning, recognition and goodwill through over 10 years of use in commerce and a substantial volume of sales under said mark.

18.     The mark has also been widely advertised continuously over this extended 10 year time period.

19.     Thus, plaintiff's **THERAPY** mark is strong, has achieved a reputation and goodwill, and is entitled to a wide scope of protection.

20.     The **THERAPY** mark has become strongly recognized by consumers and distributors in the trade as emanating from plaintiff, its predecessors, and/or a particular single source.

21.     Plaintiff has continuously used its **THERAPY** mark since 2005 to distinguish its products from similar products offered by other companies by prominently displaying its

mark on clothing and related products, and in advertising and promotional materials distributed throughout the United States.

22.    Plaintiff's products sold under its **THERAPY** mark are provided nationwide since at least as early as April 2005.

23.    More specifically, as a result of plaintiff's continuous and extensive sales and marketing since 2005, a period of over 10 years, plaintiff's **THERAPY** mark has become known and recognized as a distinctive brand throughout the clothing industry in the U.S.

24.    To that end, plaintiff's predecessor federally-registered its mark **THERAPY** in class 25 with the USPTO, filing its application to register in 2009, and wherein its registration was duly issued in August 2010. (See Exhibit A, attached). The registration is presumed valid and subsisting, and plaintiff is presumed to be the exclusive owner with the exclusive right to use the mark, and conferred a nationwide right of priority to plaintiff as of its filing in 2009. (15 U.S.C. §1057).

25.    Upon the USPTO granting the federal registration for the trademark **THERAPY** in class 25 for clothing to plaintiff in August 2010, any earlier territorial trademark rights established by a senior user using any similar **unregistered** mark, prior to plaintiff's first use in April 2005, were **frozen**, so that no further territorial expansion by defendant could occur. *Dudley v. Healthsource Chiropractice Inc.* 883 F. Supp. 2d 377 (W.D.N.Y. 2012).

26.    Plaintiff is the valid owner of territorial rights throughout the territory of the United States, subject to any limited common-law territorial rights that Defendant may have previously established in Northern California.

27.    Defendant, up until plaintiff's federal registration being granted in 2010, and for several years after 2010, never operated or owned any retail stores outside of Northern California (particularly the San Francisco and surrounding area).

28.    In 2015, on information and belief, Defendant opened a retail store named **THERAPY** in the State of Oregon, which offers clothing for sale.

29.    In September 2015, defendant filed a petition to cancel plaintiff's registration with the USPTO, alleging that it had prior common-law trademark rights to the trade name and service mark **THERAPY beyond** the territory in Northern California where its retail stores are located and operate.  However, at the same time, defendant now takes the contradictory position that it has no "minimum contacts" for jurisdictional purposes using its mark **THERAPY** outside of Northern California or its one store inOregon.

30.    The petition was filed more than 5 years after the granting of the plaintiff's federal registration, on the grounds of priority. Such grounds are "cut off" by statute five years subsequent to plaintiff's August 2010 registration date, i.e., by August 2015.  (15 U.S.C. §1064). The cancellation action in the USPTO is currently suspended pending the outcome of this civil action.

31.    Plaintiff never received any *actual notice* from Defendant of any alleged earlier trademark rights when it adopted and commenced use of its mark in 2005, or within a reasonable time thereafter, and did not become aware of use of the trade name and retail service mark **THERAPY** by defendant until the Petition with the USPTO was filed 10 years later in September 2015.

32.    Plaintiff never received any *constructive notice* of defendant's alleged trademark rights, since there was no filing made by defendant of its mark with the USPTO, from 1994, the date it has alleged in its Petition was its first use in interstate commerce, up until its filing of a U.S. trademark application in 2015.

33.    Assuming 1994 is in fact the date of first use in interstate commerce by defendant (albeit sporadic interstate use), it waited over 20 years to file its mark with the USPTO.

34.    Petitioner's website domain address was not reserved until March 2006, almost a full year after Registrant's good faith adoption and use of its mark in April 2005. It is now 10 years later, and Petitioner's website does not actually sell any clothing, nor does it receive, process and ship any orders. Any shipments sent out of state are believed to have occurred through defendant's brick and mortar stores, sufficient to confer this court with personal jurisdiction over defendant in New York through minimum contacts, but not sufficient to have established a reputation and recognition under their mark outside

California, for purposes of establishing "common law" trademark rights under established case law.

35.    Specifically, Petitioner cannot show that its mark is known, recognized and established in territories outside of the San Francisco and immediate surrounding area in Northern California, since its retail store trade name and its associated business have no specific reputation or recognition outside of Northern California. There has not been any extensive sales or advertising of defendant's trade name THERAPY outside of the territory of defendant's northern California retail stores, including during the critical time period prior to issuance of plaintiff's registration in 2010.

36.    Defendant's use of its trade name and service mark **THERAPY** referenced above in connection with clothing is without permission or authority of the plaintiff, and said use is likely to cause confusion, to cause mistake, or to deceive the public.

37.    Defendant is on notice of plaintiff's registered **THERAPY** trademark since at least as early as September 2015, when it filed its cancellation action in the USPTO against plaintiff's registration for the mark **THERAPY**.

38.    Thus, at least since September 2015, defendant has knowingly used, without the permission of JGV, plaintiff's identical **THERAPY** mark. Defendant's infringement is willful and damaging to the strength, goodwill and reputation of JGV'S federally-registered mark.

13

39.     Within a reasonable time after filing this civil action and receiving a civil action number, the U.S. Patent & Trademark Office, as per its standard procedural Rules, was requested by plaintiff JGV to suspend the cancellation proceeding, pending the outcome of this civil action, so that there will be no duplication of resources, and in the interest of judicial economy. Such request to suspend was granted in April 2016.

## COUNT I
### Federal Trademark Infringement
### 15 U.S.C. § 1114

40.     Plaintiff  repeats and re-alleges the allegations contained in paragraphs 1 through 31 above, as if fully set forth herein.

41.     Defendant's actions of advertising, promoting, offering for sale and/or selling clothing at the retail level using the identical and infringing trade name and service mark **THERAPY** in interstate commerce, without the consent of plaintiff, has caused and continues to cause a likelihood of confusion, mistake, and deception in the minds of the public and business entities with plaintiff's federally-registered trademark, namely, **THERAPY**.

42.     Defendant's use of the identical service mark and trade name **THERAPY** in interstate commerce has infringed on plaintiff's federally-registered trademark referenced above, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

14

43.    By reason of the foregoing, plaintiff has been injured in an amount not yet fully determined, but believed to be well in excess of $200,000, by way of actual losses to plaintiff and/or defendant's illegal profits since issuance of plaintiff's federal registration in August 2010.

## COUNT II
### False Designation of Origin
### UNDER 15 U.S.C. §1125(a)(1)

44.    Defendant's actions of selling clothing using the mark **THERAPY** that is identical to JGV'S trademark **THERAPY**, in interstate commerce, without the consent of plaintiff, is a false designation of origin and a misrepresentation as to source, which is likely to cause confusion and to cause mistake, and to deceive the public as to the affiliation, connection, or association of defendant or its goods/services with plaintiff's goods, and as to the origin, sponsorship, or approval of defendant's goods as emanating or being connected to JGV.

45.    Defendant's use of the identical version of JGV'S trademark is a false designation of origin and a misrepresentation as to source in interstate commerce, without plaintiff's consent, and has infringed plaintiff's trademark rights identified above in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and has allowed defendant an unfair advantage to obtain gains and profits and to inflict a disadvantage to JGV, based on Defendant's infringing use of the **THERAPY** trademark.

15

46.     Upon information and belief, defendant's wrongful activities have caused and unless enjoined by this Court will continue to cause irreparable injury and other damage to plaintiff's business, reputation and good will in its **THERAPY** trademark.

47.     Plaintiff has no adequate remedy at law.

48.     Defendant's actions have been knowing, intentional, wanton, and willful, entitling plaintiff to actual monetary damages, up to treble damages, defendant's profits, plaintiff's attorney's fees, the costs plaintiff incurs in this action, and any other remedies deemed just and awarded by this Court.

49.     By reason of the foregoing, plaintiff has been injured by way of lost sales, lost profits, and in an amount not yet fully determined without discovery, but believed to be well in excess of $200,000.

## COUNT III
## **Trademark Infringement**
### **(New York Common Law)**

50.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 41, inclusive, and incorporates them herein by reference.

51.     The aforesaid acts of Defendant's unauthorized use of JGV's trademark in connection with the sale of clothing and use of the identical **THERAPY** mark, constitutes

trademark infringement and unfair competition in violation of the common law of New York.

52.    Upon information and belief, the acts of defendant alleged above were committed with full knowledge of JGV's registration rights and with the intention of deceiving and misleading the public.

53.    Upon information and belief, the acts of defendant alleged above were committed with full knowledge of JGV's registration rights and with the intention of causing harm to plaintiff, by competing unfairly in the same territories with the same mark, and in the same field of clothing.

54.    Defendant's activities, including its intent plaintiff has learned on in continuing to open new stores and its plans to keep expanding its business territorially will continue to cause irreparable injury to plaintiff if defendant is not restrained by the Court from further violation of JGV's registration rights and associated common-law rights.

55.    Based on the allegations above, and on information and belief, the Defendant has misappropriated, and unfairly competed with JGV's commercial business and will continue to do so.

56.    As a direct and proximate result of the foregoing acts, Defendant Therapy Stores Inc. unlawfully derived and will continue to derive, income, profits, and ever-

increasing goodwill from its activities, and JGV has been damaged and will continue to suffer damages in an amount that is not presently ascertainable, but will be proven at trial.

**WHEREFORE**, plaintiff demands that:

1.    a permanent injunction be issued, defined by the territory throughout the United States, outside the territory of defendant's retail stores located in the northern California area, as more fully determined by the Court, restraining defendant, its agents, servants, employees, successors and assigns and all others in active concert and privity with them from continued infringement using the mark **THERAPY**, or using any mark confusingly similar thereof to plaintiff's **THERAPY** mark, including use as a false designation of origin, and including all selling, offers to sell, distribution, marketing, and promotion of clothing containing using said service mark, pursuant to Section 34 of the Lanham Act (15 U.S.C. §1116), and preventing continued unfair competition pursuant to New York statutes and common law; and as per the equitable power of this Court to enforce the common law of this State;

2.    an accounting to plaintiff from Defendant Therapy Stores Inc. of its profits since August 2010 outside of the territory of defendant's retail stores located in the northern California area, and to allow computation of any actual money damages suffered by plaintiff resulting from defendant's trademark infringement, false designation of origin, and unfair competition, together with interest, pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117), and unfair competition statutes and common law of the State of New York;

18

and the trebling of any award of damages to plaintiff and illegal profits made by defendant outside of its northern California retail store territory, since August 2010, including via shipments to out of state customers and via its sales in its new Oregon store opened in 2015.

3.      an award of punitive damages under New York state law and common law of new York for intentional and willful acts of unfair competition;

4.      an award of interest, costs and attorney's fees, pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117) and this court's equitable discretion;

5.      That defendant be required to pay to plaintiff money damages in the amount of at least TWO HUNDRED THOUSAND DOLLARS ($200,000), but yet to be fully determined in discovery, which plaintiff has sustained in consequence of defendant's infringement of said   THERAPY mark and said unfair trade practices and unfair competition, and to account for:

(a)      All gains, profits, and advantages derived by defendant by said trademark infringement, unfair trade practices and unfair competition; and

(b)      All gains, profits, and advantages derived by defendant by its infringement of said trademark and such damages as to the Court shall appear proper within the provisions of the trademark Statutes;

6.      That the USPTO be directed by the court to dismiss the pending cancellation petition filed by Defendant Therapy Stores Inc.; and cancel the U.S. trademark application filed in January 2015 by defendant for the mark THERAPY in class 35.

7.      That plaintiff have such other and further relief as is just and equitable.

**JURY DEMAND**

Plaintiff hereby demands its right to trial by jury on all issues triable to a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**JGV APPAREL GROUP, L.L.C.**

By:     ____/JS/_____

EZRA SUTTON (ES-2189)
JOSEPH E. SUTTON (JS-9864)
ANTHONY MORANO(AM-9205)
**EZRA SUTTON & ASSOCIATES, P.A.**
Plaza 9 Bldg., 900 U.S. Hwy. 9
Woodbridge, New Jersey 07095
(Ph.) 732-634-3520
(Fax) 732-634-3511
*Attorneys for Plaintiff*

Dated: July 12, 2016